UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **LINDA JOHNSON et al.,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )    Cause No. 1:09-cv-574-WTL-TAB<br>) |
| **THE BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS et al.,** | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the Defendants' Motion for Summary Judgment (Docket No. 36). This motion is fully briefed, and the Court being duly advised, now **DENIES IN PART AND TAKES UNDER ADVISEMENT IN PART** the Defendants' motion for the reasons set forth below.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material

fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort*

*Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II.  BACKGROUND

Plaintiffs Linda and DeWayne Johnson are the parents of the minor Plaintiff, D.J.  The Johnsons and their three children reside in Indianapolis, Indiana.  On May 4, 2007, D.J. was a student at Willard Gambold Middle School.  That night, D.J. attended the school's seventh and eighth grade student prom where his peers elected him "prom prince."  Between 10:00 p.m. and 10:30 p.m., Linda arrived at the school to pick up D.J.  Because she had been at the laundromat, Linda was dressed in sweat pants and a t-shirt.  Linda felt that she was not dressed appropriately to enter the school and retrieve D.J.  Instead, she sent her two other children – sixteen year old Joshua and twelve year old J.J. – to get their brother.  When Joshua and J.J. attempted to enter the school, security officers refused to let them pass.  Ultimately, Joshua was placed in handcuffs, arrested for criminal trespass, and taken to the school's main office.[1]

D.J., who was still at the prom, learned of his brother's predicament from other students.  D.J. quickly left the prom and went to the office where he observed Joshua in handcuffs.  Linda and three security officers – Defendants Officer Robert Hardiman, Officer Tina Hardiman, and Sargent Dennis Kraeszig – were already in the office.  D.J. was upset and raised his voice.  He also slapped a mailbox to get the Defendants' attention.  The Defendants told D.J. to leave.  He refused to do so because he was concerned about his mother and brother.  At some point, D.J.'s right hand went through a glass window that separated the office from the hallway.  D.J.'s hand

---

[1] Although charges were filed against Joshua in juvenile court they were ultimately dismissed.

was so severely lacerated that it was nearly severed from his wrist. D.J. was taken by ambulance to the hospital where he underwent surgery. He now has a scar running from the middle of his right hand up towards his elbow.

Following the incident, Sargent Kraeszig completed a probable cause affidavit as a result of which a juvenile court petition alleging an act of delinquency was instituted against D.J. This petition alleged that D.J. was a delinquent child, that he committed a delinquent act when he broke the office window, and that if D.J. were an adult his conduct would constitute criminal mischief. D.J. denied the charges and a juvenile court hearing was held in October 2007 before a magistrate. At the hearing D.J. and his parents were represented by private counsel and both D.J. and his mother testified. D.J.'s counsel also called witnesses Crystal Woods[2] and Alicia Walton[3] and recalled Officer Robert Hardiman and Principal Yvonne Rambo. Although D.J.'s counsel subpoenaed DaWonda Gillespy, who witnessed the prom night incident from the hallway, Gillespy failed to appear. D.J.'s counsel made an offer to prove on the record and explained the substance of Gillespy's anticipated testimony. Ultimately, the magistrate recommended that the juvenile court enter a true finding against D.J. for criminal mischief, which would be a class B misdemeanor if it was committed by an adult. D.J. and his parents paid $250 restitution and D.J. was referred to the Probation Department. The Johnsons did not appeal the magistrate's recommendation.

The Johnsons, individually and on D.J.'s behalf, have now filed suit against the Board of

---

[2] Ms. Woods is a science teacher at Willard Gambold Middle School.

[3] Ms. Walton is an employee of the Indianapolis Department of Parks and Recreation who participated in the after school programs at Willard Gambold Middle School.

School Commissioners of the City of Indianapolis ("the Board"), Sargent Kraeszig, and Officers Tina and Robert Hardiman. The Plaintiffs allege both state and federal causes of action against the Defendants because they allege that Sargent Kraeszig "forced Plaintiff D.J. against an interior wall of the office, causing D.J.'s hand to break through a glass window." Compl. ¶ 21. The Defendants have moved for summary judgment, alleging either that the juvenile court's true finding collaterally estops the Plaintiffs from asserting that any of the Defendants forced D.J.'s hand through the window or that the rule of *Heck v. Humprey*, 512 U.S. 477 (1994), applies in this case.

### III. DISCUSSION

The Defendants' argument under *Heck* is not persuasive. In *Heck*, the Supreme Court addressed whether an individual who was convicted of a crime could bring a § 1983 suit for damages when the damages suit would call into question the validity of his conviction. *See* 512 U.S. at 483. The Supreme Court concluded that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id*. at 486. Thus,

> in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id*. at 486-87. If a prisoner's claim for damages under § 1983 "would necessarily imply the invalidity of his conviction or sentence" then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at

487.

Clearly, in order for *Heck* to apply, D.J. must have been convicted of a criminal offense. Despite the Defendants' argument that D.J. was convicted of criminal mischief, there is nothing in the record to support this assertion. At most, D.J. was adjudicated delinquent in juvenile court. The Indiana Code states: "A child may not be considered a criminal as the result of an adjudication in a juvenile court, *nor may an adjudication in juvenile court be considered a conviction of a crime*." IND. CODE 31-32-2-6 (emphasis added). Given this clear statement, as well as Indiana case law which discusses the fact that juvenile court proceedings are unlike criminal court proceedings, *see In re K.G.*, 808 N.E.2d 631, 635-37 (Ind. 2004), the Court concludes that the *Heck* rule does not apply because D.J. was never criminally convicted of an offense. Accordingly, with regard to this argument, the Defendants' motion is **DENIED**.

The Defendants also argue that, by virtue of the juvenile court adjudication, the Plaintiffs are collaterally estopped from asserting that any of the Defendants forced D.J.'s hand through the window. This Court applies Indiana's collateral estoppel law. *See* 28 U.S.C. § 1738; *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995) (stating "the effect of a state judgment in federal court depends on the state's rather than the federal law of . . . collateral estoppel"). In Indiana, "collateral estoppel operates to bar a subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993). In *Sullivan v. American Casualty Co.*, 605 N.E.2d 134, 138 (Ind. 1992), the Indiana Supreme Court "dispensed with the rigid requirements of mutuality and identity of parties" and instead focused on "whether the party against whom the prior judgment

6

is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel."

The Defendants allege that "the juvenile court judge entered a true finding against D.J." Docket No. 37 at 3. In response, the Plaintiffs assert that "[t]he Court's entry from the Denial Hearing contains a *recommendation* signed by Magistrate Scott Stowers that a true finding be entered and the signature line for the approval and order adopting the magistrate's recommendation by the juvenile court judge does not contain a signature." Docket No. 40 at 14 (emphasis added). They also note that "the record before the Court reflects that a juvenile Court magistrate served as the hearing officer for the factfinding hearing and pursuant to his limited statutory authority granted by IC 33-23-5-9(a) made a *recommendation* for entry of the 'true finding' that D.K. committed an act of delinquency." *Id*. at 19. Indiana Code 33-23-5-9(a) provides that "a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order." In the instant case the Court was provided only a copy of the magistrate's report and recommendation – there is no final order or judgment from the court.

Although admittedly the Court has not conducted extensive research on this issue, it appears that in order for collateral estoppel to apply there must be a judgment in a prior case. The Defendants have not provided the Court with the final order or judgment from D.J.'s juvenile court adjudication. Accordingly, the Defendants' motion is **TAKEN UNDER ADVISEMENT** with respect to this argument. Within **SEVEN DAYS** of the date of this Entry the Defendants shall either supplement the record with a judgment from the juvenile court case or explain why a judgment is not a necessary part of the Court's collateral estoppel analysis.

SO ORDERED: 10/01/2010

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Daniel A. Ladendorf
Ladendorf & Ladendorf
dan@ladendorf.com

Caren L. Pollack
Pollack Law Firm, P.C.
cpollack@pollacklawpc.com